## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

TRACY N. HARRISON,

              **Plaintiff,**

v.

CAROLYN W.  COLVIN,
**Acting Commissioner of Social Security Administration,**

              **Defendant.**

**Case No.  14-CV-02339-DDC**

---

### MEMORANDUM AND ORDER

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II and Title XVI of the Social Security Act, as amended. Plaintiff has filed a brief (Doc. 11) seeking judicial review of the Commissioner's decision.  The Commissioner has filed a brief in opposition (Doc. 16) and submitted the administrative record contemporaneously with her Answer (Doc. 8).  When plaintiff filed her reply brief (Doc. 25), this matter became ripe for determination.  Having reviewed the administrative record and the parties' briefs, the Court affirms the Commissioner's decision.

### I.      Factual Background and Procedural History

Plaintiff applied for Social Security Disability ("SSD") benefits and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385, alleging disability beginning December 1, 2010.  (R. 129–35, 136–42) The Social Security Administration denied plaintiff's applications on October 5, 2011 (*Id.* at 52–77, 82–88).  Plaintiff requested a hearing by an Administrative Law Judge ("ALJ") (*Id.* at 89–

1

96), who held a hearing on August 22, 2012 (*Id.* at 11, 29).  On September 28, 2012, the ALJ issued a decision denying plaintiff's application for SSD benefits because she determined that plaintiff was not disabled from December 1, 2012, through the date of the decision under sections 216(i) and 223(d) of the Social Security Act (*Id.* at 11–23).  42 U.S.C. §§ 416(i), 423(d). The ALJ also denied plaintiff's application for SSI benefits for the same reason under section 1614(a)(3)(A) of the Social Security Act (R. 11–23).  42 U.S.C. § 1382c(a)(3)(A).

Plaintiff filed an appeal with the Appeals Council on October 29, 2012.  (R. 9–10)  The Appeals Council denied plaintiff's request for review on May 17, 2014.  (*Id.* at 1–6)  Plaintiff has exhausted the proceedings before the Commissioner and now seeks judicial review of the final decision denying her SSD and SSI benefits.

## II.     Legal Standard

### A.  Standard of Review

Plaintiff's request for review invokes the Court's power of judicial review under 42 U.S.C. § 405(g).  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision denying benefits is limited to considering whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Id.*; *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax*, 489 F.3d at 1084 (citations and internal quotation marks

omitted).  It must be "more than a scintilla," although it need not be a preponderance.  *Id.*  While the courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's.  *Id.* (citation and internal quotation marks omitted).  But, they also do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational."  *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted).  When determining whether substantial evidence supports the Commissioner's decision, the courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision."  *Id.* (citation omitted).  "Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion."  *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987)).

A "failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis."  *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)).  But, such a failure justifies reversal only in "appropriate circumstances"—applying an improper legal standard does not require reversal in all cases.  *Glass*, 43 F.3d at 1395; *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*).  Some errors are harmless and require no remand or further consideration.  *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012);

*Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### B.  Disability Determination

Claimants seeking SSD and SSI benefits carry the burden to show that they are disabled. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted).  In general,[1] the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disability."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (governing claims for supplemental security income)).  As summarized by the Tenth Circuit, this familiar five-step process is as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity.  If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . .  At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation.  If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work.  Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

---

[1]      The definition differs for some blind individuals and minors.  *See* 42 U.S.C. §§ 423(d)(1)(B) (definition for some blind individuals); 1382c(a)(3)(C)(i) (definition for individuals "under the age of 18").

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. §
404.1520(a)-(g).  The claimant has the "burden of proof on the first four steps," but the burden
shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an
alternative work activity and that this specific type of job exists in the national economy.'"
*Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d
748, 751 (10th Cir. 1988)).  This analysis terminates if the Commissioner determines at any point
that the claimant is or is not disabled.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799,
801 (10th Cir. 1991).

The Court will review the ALJ's decision denying plaintiff benefits to determine whether
it is "free from legal error and supported by substantial evidence."  *Wall*, 561 F.3d at 1052.

### III.   Analysis

The ALJ found that plaintiff has the following "severe impairments:"  status post lumbar
surgery (post laminectomy syndrome), obesity, anxiety, depression, migraines, and baker's cyst
of the right knee.  (R. 16)  However, the ALJ concluded that plaintiff does not have an
impairment or combination of impairments that meets the severity of one of the listed
impairments in 20 C.F.R. Part 404.  (*Id.* at 17)  Instead, the ALJ found that plaintiff has the
residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), in
> that she can only occasionally lift ten pounds.  She can stand and/or walk 2 of 8
> hours and sit 6 of 8 hours.  She must have the opportunity to alternate between
> sitting and standing at least every 30 minutes.  She can occasionally climb ramps
> or stairs, but never climb ladders, ropes, scaffolds and never balance.  She can
> occasionally stoop, but never kneel, crouch or crawl.  She must avoid exposure to
> extreme cold, excessive vibration and operational control of moving machinery,
> unprotected heights and hazardous machinery.  She is capable of performing work
> that involves some skilled but not complex tasks.  She would need to have no
> interaction with the public and she can work around co-workers but with only
> occasional interaction with co-workers.

(*Id.* at 18)  Based on that RFC, the ALJ determined that plaintiff was unable to perform any past relevant work.  (*Id.* at 21)  Still, based on plaintiff's age, education, work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.* at 21)

Plaintiff challenges the ALJ's findings for two reasons.  She argues that (1) the ALJ's RFC is unsupported by the substantial evidence of the record as a whole, and (2) the ALJ failed to sustain the Commissioner's burden at step five.  *See generally* Doc. 11.

### A.  Was the ALJ's RFC finding supported by substantial evidence of the record as a whole?

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence of the record as a whole.  Doc. 11 at 25–34.  The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  It determines the *most* an individual can do despite his or her limitations.  *Id.* (emphasis in original).  "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medial record."  *Howard*, 379 F. 3d at 949.  This RFC assessment is an administrative determination, not a medical one. *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996)).  It should be based on "all of the evidence in the record, not only the medical evidence."  *Dixon v. Apfel*, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999).

The ALJ's assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  SSR 96-8p, 1996 WL 374184, at *7.  But, the ALJ need not discuss every piece of evidence as long as the findings demonstrate the ALJ considered the whole record.  *Clifton v. Chater*, 79 F.3d 1007,

1009–10 (10th Cir. 1996). Plaintiff argues the RFC in her case was unsupported by the evidence in the record for a number of reasons. Doc. 11 at 25–34. The Court addresses each, in turn.

### 1. Did the ALJ err in assigning substantial weight to two medical opinions?

Plaintiff asserts that the ALJ improperly relied on Dr. Ceaser and Dr. Akeson's medical opinions. Specifically, she claims that the ALJ erred by giving their opinions substantial weight because (1) they were non-examining state agency physicians, (2) portions of their opinions were prepared by laypersons hired by defendant, and (3) the opinions were outdated and not based on all of the medical record. Doc. 11 at 25–27.

### a. Non-examining medical opinions may be give substantial weight if they are consistent with the evidence in the record.

The applicable regulations required the ALJ to consider all medical opinions. *See* 20 C.F.R. § 404.1527(c). They also required the ALJ to discuss the weight she assigned to such opinions. *See id.* § 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources . . . .").

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." *Id.* § 404.1527(a)(2). [2]   The regulations identify three types of "acceptable medical sources":  (1)

---

[2]      This regulation reserves some issues to the Commissioner "because they are administrative findings that are dispositive of a case"—opinions about such issues do not constitute medical opinions under the regulations. 20 C.F.R. § 404.1527(d). "[T]reating source opinions on issues that are reserved

treating sources, *i.e.*, medical sources who have treated or evaluated the claimant or have had "an

ongoing treatment relationship" with the claimant; (2) nontreating sources, *i.e.*, medical sources

who have examined the claimant but lack an ongoing treatment relationship; and (3)

nonexamining sources, *i.e.*, medical sources who render an opinion without examining the

claimant. *See id.*; 20 CFR § 404.1502; *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 n.2 (D. Kan.

2011).  The Commissioner generally gives more weight to opinions from examining sources than

to opinions from nonexamining sources.  20 C.F.R. § 404.1527(c)(1).  And, the Commissioner

generally gives more weight to treating sources because

> these sources are likely to be the medical professionals most able to provide a
> detailed, longitudinal picture of [the claimant's] medical impairment(s) and may
> bring a unique perspective to the medical evidence that cannot be obtained from
> the objective medical findings alone or from reports of individual examinations,
> such as consultative examinations or brief hospitalizations.

*Id.* § 404.1527(c)(2).

Evidence from non-examining sources such as state agency physicians and medical

experts is considered opinion evidence.  20 C.F.R. § 416.927(e).  ALJs are not bound by non-

examining source opinions but must consider them, except for opinions about the ultimate issue

of disability.  *Id.*  While opinions of non-examining agency physicians are generally entitled to

little weight, the ALJ may give such opinions substantial weight when they are consistent with

other evidence in the record.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("

The opinion of an examining physician is generally entitled to less weight than that of a treating

physician, and the opinion of an agency physician who has never seen the claimant is entitled to

the least weight of all."); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions

---

to the Commissioner are never entitled to controlling weight or special significance."  SSR 96–5p, 1996
WL 374183, at *2.  But such opinions "must never be ignored," and, when "evaluating the opinions of
medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable
factors" set out in the regulations, 20 C.F.R. §§ 404.1527(c) and 416.927(d).  *Id.* at *3.

of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.”); *Barnhill v. Astrue*, 794 F. Supp. 2d 503, 516 (D. Del. 2011) (citing *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)) (concluding that the ALJ can accept the opinions of reviewing state agency physicians over the opinion of treating physician when the agency opinions are consistent with the evidence in the record).  Here, the ALJ considered the state agency opinions as required and gave Dr. Ceaser’s opinion significant weight and Dr. Akeson’s substantial weight.  (R. 20– 21)  She was entitled to afford the opinions substantial/significant weight, so long as they were consistent with the evidence in the record.  They are.

The ALJ accorded the reviewing state agency physician’s opinion significant weight because Dr. Ceasar is familiar with the definitions and evidentiary standards used by the Social Security Administration and her opinion was consistent with the minimal objective findings and plaintiff’s daily living activities.  (R. 21).  In particular, the ALJ found her opinion consistent with claimant’s ability to go camping.  (*Id.*)  Plaintiff argues that the ALJ’s statement that Dr. Ceaser’s findings are consistent with the “minimal objective findings,” means the ALJ and Dr. Ceaser found plaintiff’s impairments to be “minimal.”  Doc. 25 at 4–5.  Plaintiff contends that “minimal objective findings” means Dr. Ceaser based her RFC assessment solely on mild pain, which she argues is not supported by the record that shows objective evaluations  concluding that plaintiff experienced moderate to severe pain or tenderness, positive straight leg tests, uncontrolled back problems, and antalgic gait, among other things.  *Id.* (*See, e.g.*, R. 394, 521, 541–42, 545, 795, 802–03, 898)  But, the record also contains objective evidence of mild pain, ability straight leg raise well, ability to undergo exercise testing or participate in an exercise program, and normal gait.  (*See, e.g.*, R. 491, 502, 510, 529, 533, 545, 724, 806, 818, 897, 901)

The ALJ explicitly noted that the objective findings in the record are inconsistent and that plaintiff's allegations of pain were just partially credible.  (*Id.* at 19)  She found, however, that plaintiff's impairments cause more than minimal functional limitations.  (*Id.* at 16)  Dr. Ceaser also found plaintiff had a number of functional limitations.  (*Id.* at 58–60)

Dr. Ceaser reviewed plaintiff's file and, in her opinion, plaintiff can perform sedentary work, subject to a number of functional limitations.  (R. 21, 58)  In Dr. Ceaser's RFC assessment, she found that plaintiff  has exertional, postural, and environmental limitations.  (*Id.* at 58–59)  In her opinion, plaintiff occasionally can lift 10 pounds, frequently carry less than 10 pounds, and can sit for 6 hours of an 8-hour workday.  (*Id.* at 58)  Dr. Ceaser found these exertional limitations based on plaintiff's obesity, spinal surgeries, and her difficulty standing and walking for any length of time.  (*Id.* at 59)  Dr. Ceaser next concluded plaintiff could occasionally climb stairs, stoop, kneel, crouch, and crawl; frequently balance; and never climb ladders.  (*Id.* at 59)  She also determined plaintiff should avoid exposure to extreme cold, vibration, and hazards like machinery and heights.  (*Id.* at 59–60)   Dr. Ceasar considered plaintiff's lumbar spine impairments in concluding she had these postural and environmental limitations.  (*Id.* at 59–60)  Dr. Ceaser made these conclusions after reviewing the varying medical records.  (*Id.* at 53–55)  She also reviewed other evidence in the record, including reports from plaintiff's community support specialist that indicated plaintiff could go camping in July 2011 and that she occasionally goes fishing by herself.  (*Id.* at 53–55, 176–78, 708–09)  The record contains no other RFC evidence explaining how her various physical conditions would prevent her from performing any work in the national economy.  The Court concludes that Dr. Ceaser's findings are consistent with the evidence in the record and thus the ALJ did not err by giving them significant weight.

The ALJ accorded the opinion of the reviewing state agency psychologist substantial weight because it was consistent with the record as a whole, including:  plaintiff's daily living activities; essentially normal mental status examinations; and because Dr. Akeson is familiar with the definitions and evidentiary standards used by the agency.  (R. 20)  Plaintiff argues that the ALJ improperly relied on Dr. Akeson's RFC assessment and erred by finding it consistent with plaintiff's "essentially normal mental status examinations."  Doc. 25 at 5–6.  She maintains the ALJ and Dr. Akeson's RFCs were not based on the mental exam evidence in the record, because the record evidence is not "normal."  *Id.*  Plaintiff points to her GAF scores of 50 or less.[3]  *Id.*  (*See* R. 314, 336, 454, 646, 696, 739)  She also points to record evidence of major depression requiring medication, suicidal thoughts, sporadic memory, limited judgment and insight, fair to poor grooming and hygiene, and ER visits produced by her depression and anxiety, among other things.  *Id.*  (*See, e.g.*, *R.* 312, 336–37, 364–365, 367, 645, 651, 921)

But, the record also contains reports showing no signs of depression, anxiety, or suicidal ideations.  (*See, e.g.*, R. 295, 340, 364, 371, 666, 676).  Plaintiff was found to be pleasant and cooperative.  (*Id.* at 287, 302, 352, 366, 371)  The evidence plaintiff points to of sporadic memory and suicidal thoughts was reported by plaintiff herself, and not derived from an objective medical opinion.  (*See id.* at 312)  At other times plaintiff reported her memory to be good.  (*Id.* at 662, 738)  And other reports found her judgment and insight to be good or normal.  (*See id.* at 312, 529)  Overall, most reports found her grooming and hygiene to be good— plaintiff pointed to the few outliers.  (*E.g.*, R. 312, 340, 676, 662, 643, 645, 657, 660, 662, 668, 670, 738, 772)  Importantly, while one objective psychiatric assessment found plaintiff to be agitated and anxious, most objective psychiatric assessments found plaintiff was alert, and oriented with "normal mental status."  (*See, e.g.*, R.  394, 397, 402, 406, 410, 414, 418, 423, 491,

---

[3] The Court will address GAF scores in Section III.A.2, below.

498, 502, 510, 517, 521, 545, 556, 566, 581, 594, 788, 795, 803, 898, 902 , 906)  The Court thus concludes the ALJ could find Dr. Akeson's RFC to be consistent with the "essentially normal mental status exams."

Dr. Akeson reviewed plaintiff's file, noted her history of severe anxiety and depression, and determined plaintiff had functional limitations on her ability to work.  (R. 56–57)   He opined that claimant suffers understanding and memory limitations, concentration and persistence limitations, and social interaction limitations.  (*Id.* at 60-61)  He noted that "claimant describes difficulty with spoken instructions," but experiences no difficulty reading for long periods or following written instructions.  (*Id.* at 60)  This is substantiated by the record.  (*See id.* at 189 (plaintiff's statements about difficulty with spoken instructions), *see also id.* at 177, 181, 189 (plaintiff likes to read and watch TV))  Dr. Akeson found plaintiff's claims that she "can't remember anything" and has "no concentration" were only partially credible because her medical records did not reflect such severe limitations.  (*Id.* at 57)  Because of this, Dr. Akeson found plaintiff would be moderately limited in her ability to:  understand and remember detailed instructions; carry out detailed instructions; and maintain attention and concentration for extended periods.  (*Id.* at 60-61)  He next found plaintiff to be moderately limited in her ability to interact with the general public.  (*Id.* at 61)  He determined this from claimant's statements in the evidentiary record that she does not like people to see her.  (*See id.* at 61, 178, 190)  But, Dr. Akeson found plaintiff is not limited in her ability to get along with co-workers, ask simple questions, respond appropriately to criticism from supervisors, or adhere to basic standards of cleanliness.  (*Id.* at 61)  He concluded plaintiff has the capacity to follow moderately complex instructions and concentrate on moderately complex tasks.  (*Id.* at 62)

In Dr. Akeson's opinion, despite plaintiff's mental limitations, she is able to work in an environment that does not require frequent public contact.  (R. 62)  Ultimately, he found that plaintiff's daily living activities carried mild restrictions at most, she was moderately limited in maintaining social functioning, and moderately limited in maintaining concentration, persistence or pace.  (*Id.* at 56)   Again, the record contains no other RFC evidence about how her various mental conditions would prevent her from performing any work in the national economy.  The Court concludes that Dr. Akeson's findings are consistent with the medical evidence in the record, and thus properly deserve substantial weight.

Because the opinions of the two state agency doctors are consistent with the evidence in the record, the ALJ properly gave the opinions substantial weight when making her RFC assessment.

**b.   Plaintiff's argument that portions of the non-examining physician opinions were prepared by laypersons hired by defendant is without merit.**

Plaintiff next argues that the ALJ erred by giving substantial weight to the non-examining state agency opinions because it is not clear which portion of the document was prepared by Dr. Ceaser or Dr. Akeson and which portion employees of defendant had completed.  Doc. 11 at 27. The Court disagrees.  The sections prepared by the state agency physician and psychologist are signed by the preparing doctor.  At the end of the sections the doctors prepared, the record evidence provides that "[t]hese findings complete the medial portion of the disability determination" followed by electronic signatures.  (*See* R. 57, 60, 62)

>        c.   The argument that the state agency opinions were outdated and could
>             not be relied on because they were not based on all of the evidence in the
>             medical record is also without merit.

Plaintiff argues that the ALJ erred by giving the state agency opinions substantial weight

because the opinions were stale and did not consider all of the evidence.  Doc. 11 at 27.  In

determining what weight to give to a nonexamining source's opinion, the ALJ should "evaluate

the degree to which these opinions consider[ed] all of the pertinent evidence."  20 C.F.R. §

404.1527(c)(3).  Here, the ALJ issued her decision denying plaintiff's application for benefits on

September 28, 2012.  (R. 11)  The state agency doctors issued their RFC assessments on

September 19 and September 20, 2011.  (R. 60, 62)  The doctors reviewed the medical records

and other evidence providing information on plaintiff's conditions through August and

September of 2011.  (R. 53–55)  Yet, the evidentiary record before the ALJ contained about a

year's worth of additional medical records not considered by the state physician and

psychologist.

But, this does not change the fact that the consultants could review the record (as it then

existed) before providing an opinion.  *See Baca v. Colvin*, No. 13-1126-JWL, 2014 WL

3661149, at *5 (D. Kan. July 23, 2014).  And, the final decision in this case was made by the

ALJ based on the entire record, including the evidence admitted after the state agency doctor's

reviews.  *See id.*  "It is the ALJ's responsibility to determine whether the new evidence supports

the consultant's opinions."  *Id.*  Here, the ALJ found that the evidence in the record as a whole is

consistent with the opinions of the state agency doctors.  And, the ALJ provided an RFC with

more restrictive limitations than the RFC's provided by the state agency doctors—adding a

sit/stand option and finding that plaintiff can never kneel, crouch, or crawl.  This indicates the

ALJ considered the whole record in making her RFC determination and did not completely rely

on the state consultant opinions.  Thus, the ALJ did not err by giving substantial weight to their

opinions.

### 2.   Did the ALJ err by failing to take into account plaintiff's GAF scores when making the RFC?

Plaintiff argues that the RFC is not supported by the record as a whole because, she

contends, the ALJ ignored plaintiff's consistently low GAF[4] scores.  Doc. 11 at 27.  Most of the

GAF scores were determined by Ms. Boyd, an advanced practice nurse.  (R. 454, 646, 663, 696,

739).  One GAF was prepared by Dr. Nabil as part of a psychiatric evaluation.  (R. 336–37)  The

ALJ did not mention these scores in her decision.  Plaintiff argues that these GAF scores are

substantial evidence supporting her testimony that she is unable to work, and the ALJ erred by

ignoring this favorable evidence to plaintiff.  Doc. 11 at 27.  The Court disagrees.

"Standing alone, a low GAF score does not necessarily evidence an impairment seriously

interfering with a claimant's ability to work."  *Lee v. Barnhart*, 117 F. App'x 674, 679 (10th Cir.

2004) (citing *Eden v. Barnhart,* 109 F. App'x 311, 314 (10th Cir. 2004)).  But, "GAF scores of

50 or less do suggest an inability to keep a job."  *Oslin v. Barnhart*, 69 F. App'x 942, 947 (10th

Cir. 2003).  While the GAF score can manifest the inability to hold a job, unlike the *Oslin* case,

---

[4]     "GAF" stands for "Global Assessment of Functioning."  *Keyes–Zachary v. Astrue*, 695 F.3d
1156, 1162 (10th Cir. 2012).  "The GAF is a 100–point scale divided into ten numerical ranges, which
permits clinicians to assign a single ranged score to a person's psychological, social, and occupational
functioning."  *Id.* at 1162 n.1.  A GAF score of 41 to 50 reflects "[s]erious symptoms" or "any serious
impairment in social, occupational, or school functioning."  *Id.* (quoting American Psychiatric Ass'n,
Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000) ["DSM–IV–
TR"] ).  A score of 51 to 60 indicates "[m]oderate symptoms" or "moderate difficulty in social,
occupational, or school functioning."  *Id.* (same).

The current version of the American Psychiatric Association's Diagnostic and Statistical Manual
of Mental Disorders "DSM–5" (5th ed. 2013) no longer endorses use of a GAF score and recognizes that
the score was discontinued for several reasons, "including its lack of clarity (i.e., including symptoms,
suicide risk, and disabilities in descriptors) and questionable psychometrics in routine practice."  *See
Martinez v. Colvin*, No. 13–CV–00985–MEJ, 2014 WL 2967600, at *3 n.4 (N.D. Cal. July 1, 2014);
*accord Krchmar v. Colvin*, 548 F. App'x 531, 534 n.2 (10th Cir. 2013); *Williams v. Colvin*, 757 F.3d 610,
2014 WL 2964078, at *2 (7th Cir. July 2, 2014).  GAF scores remain germane to this case, however,
because the medical and administrative records include references to them.

the GAF assessments and other evidence here did not indicate directly that plaintiff was unable to hold a job.  *See id.*  In *Oslin*, a doctor and case manager each completed an RFC form explicitly stating that the claimant would be unable to function in a work setting.  *Id.* at 946. Thus, the *Oslin* court found the ALJ erred by not discussing his rejection of the RFC assessments or the GAF scores ranging between 45 and 55, which conflicted with the ALJ's finding that the claimant could work.  *Id.* at 946–47.  The court concluded the ALJ should have discussed the GAF scores because they may indicate the inability to keep a job based on the RFC assessment evidence reaching such a conclusion.  *Id.*  at 947.

Here, no objective evidence directly indicated that plaintiff is unable to work.  There is no indication that the ALJ disregarded the GAF opinion from Dr. Nabil or Ms. Boyd.  It is true the ALJ cannot ignore probative evidence that does not support her decision.  *See Oslin*, 69 F. App'x at 947.  But, plaintiff here does not show evidence how the GAF assessments in her case indicate the inability to hold a job or negate the ALJ's RFC assessment.  *See Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011) (noting that GAF scores that are not linked to any work-related limitations are not particularly helpful and cannot alone determine disability).

Dr. Nabil's GAF of 50 was accompanied by a mental status exam finding plaintiff to have sad affect and depressed mood.  (R. 336–37)  But, no explanation was given explaining how the score was calculated or how it impacted plaintiff's functional abilities.  This GAF score was made in July 2010 and the evaluation indicates that, at that time, plaintiff was working as a receptionist.  (R. 336)  Because plaintiff was able to work during at the time of this GAF assessment, the score of 50 here does not show an inability to work.

Moreover, while applicable regulations require the ALJ to consider all acceptable medical opinions and assign weight to each opinion, there is no evidence that Dr. Nabil's GAF

conflicts with the ALJ's RFC determination.  *See* 20 C.F.R. § 404.1527(c), (e)(2)(ii).  This GAF

evidence is not "probative evidence" that the ALJ must address.  *See Briggs ex. Rel. Briggs v.*

*Massanari*, 248 F. 3d 1235, 1239 (10th Cir. 2001) (holding that the ALJ could not ignore

probative evidence that did not support his decision).  Dr. Nabil appears to be an examining, but

not treating medical source.  There is no indication that Dr. Nabil's GAF score does not support

the ALJ's RFC finding about plaintiff or that the ALJ rejected his opinion.  *See Lopez v.*

*Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003) (finding one-time examining doctor's GAF

score of 40 did not indicate claimant could not work, and this "standing alone, does not

undermine nor is it significantly probative evidence in opposition to the ALJ's ultimate

conclusions" about claimant's ability to work (internal citations and quotations omitted)).

Therefore, the ALJ's failure to consider Dr. Nabil's GAF expressly or assign it weight is

harmless.

Ms. Boyd's GAF scores of 50 either contain no explanation for the score or are

accompanied by a progress note indicating some depression and limited judgment and insight.

(*See* R.  454, 645–646, 662–63, 696, 738–739)  Some of the reports containing explanations

appear to be copied from previous reports, as the December 2011 report shows depression

related to finances around Christmas, and the same thing in January 2012 and then May 2012.

(*Id.* at 645–646, 662–63, 738–739)  While Ms. Boyd's progress notes indicate some depression

and limited judgment, she finds plaintiff's thoughts were linear and well organized, her level of

knowledge was average, and her grooming and hygiene good.  (*Id.*)  Like Dr. Nabil, she did not

explain how she calculated the score or how it affected plaintiff's functional abilities.  Her GAF

assessments do not show that plaintiff was unable to hold a job and thus are not particularly

helpful.  *See Butler v. Astrue*, 412 at 147.

Moreover, when a GAF is provided by someone who is not an acceptable medical source, it does not, by itself, constitute a medical opinion. *Holcomb v. Astrue*, 389 F. App'x 757, 759 (10th Cir. 2010) (internal citations omitted).  The ALJ is still required to consider such nonmedical opinion evidence in the record, but the ALJ is not required to discuss every piece of evidence considered.  *Id.* at 760 (internal citations omitted); SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006).  Instead, the ALJ must discuss the evidence supporting her decision, any uncontroverted evidence she does not rely on, and evidence she rejects.  *Holcomb*, 389 F. App'x at 759.   As an advanced practice nurse, Ms. Boyd is not "an acceptable medical source."  SSR 06–03p, 2006 WL 2329939, at *2.  There is no indication that Ms. Boyd's GAF scores for plaintiff do not support the ALJ's decision or that the ALJ rejected them.  Although the ALJ did not discuss the GAF scores in her decision, she did indicate that she had considered all of the evidence.  (R. 14, 16)  *See Clifton v. Chater*, 79 F. 3d 1007, 1009–10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss ever piece of evidence.")  The Court thus finds no error in the ALJ's failure to discuss explicitly Ms. Boyd's GAF scores.

The ALJ discussed the evidence germane to her RFC assessment provided by two acceptable medical sources—the state agency doctors who reviewed plaintiff's record,—which dealt with the plaintiff's work limitations.  These opinions did not assign a GAF score to plaintiff.  So, there was no conflicting GAF opinion evidence that the ALJ needed to discuss.  *See Keyes-Zachary*, 695 F. 3d at 1164 (noting that where there are inconsistent GAF scores in the record the ALJ may need to explain how he weighed the conflicting GAF evidence).  The GAF scores are not essential to the ALJ's RFC determination, and, where plaintiff cites nothing in the record indicating that her GAF scores undermine the ALJ's RFC determination, it was

unnecessary for the ALJ to address Dr. Nabil's and Ms. Boyd's GAF scores directly in her

decision.  *See Holcomb*, 389 F. App'x at 759 ("While a GAF score may be of considerable help

to the ALJ in formulating the RFC . . . it is not essential to the RFC's accuracy . . ."); *Miller v.*

*Colvin*, No. 14-4010-SAC, 2015 WL 1346854, at *5 (D. Kan. Mar. 25, 2015) ("By itself, a GAF

score is not essential to the RFC's accuracy . . . . [Claimant] cites nothing in the record indicating

that [the GAF scores] undermine the ALJ's RFC determination or otherwise indicate[ ] an

impairment that would seriously interfere with [claimant's] ability to work." (internal citations

and quotations omitted)).  The Court finds no reversible error in the ALJ's treatment of the GAF

evidence.

### 3.  Did the ALJ err by failing to order a consultative examination?

Plaintiff next asserts that the ALJ, before making her RFC determination, should have

obtained a consultative examination to determine the mental and physical functional limitations

imposed by plaintiff's severe impairments.  Doc. 11 at 25.  She claims that the ALJ should not

have relied on just the state agency's RFC assessments, but that a consultative exam was

necessary as well.  *Id.*

Generally, it is the claimant's responsibility to provide the evidence used to make a RFC

finding.  20 CFR §404.1545(a)(3).  The Tenth Circuit has explained that the plaintiff bears the

burden of showing the necessity of a consultative examination:

> Ordinarily, the claimant must in some fashion raise the issue sought to be
> developed which, on its face, must be substantial.  Specifically, the claimant has
> the burden to make sure there is, in the record, evidence sufficient to suggest a
> reasonable possibility that a severe impairment exists.  When the claimant has
> satisfied his or her burden in that regard, it then, and only then, becomes the
> responsibility of the ALJ to order a consultative examination if such an
> examination is necessary or helpful to resolve the issue of impairment.

*Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (citations omitted).  So, once a severe impairment is established, the ALJ is responsible for developing the complete medical history and arranging a consultative exam, if necessary.  *Id.; see also* 20 CFR §404.1545(a)(3).  An ALJ "has broad latitude in ordering consultative examinations."  *Hawkins*, 113 F.3d at 1166 (citing *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)); *see also Norris v. Barnhart*, 152 F. App'x 698, 702 (10th Cir. 2005) (quotation and citation omitted).  An ALJ should consider ordering a consultative examination when "there is a direct conflict in the medical evidence requiring resolution or where the medical evidence in the record is inconclusive."  *Hawkins*, 113 F.3d at 1166 (citations omitted).  Here, plaintiff argues too little medical record evidence exists to make an RFC assessment and that there is a direct conflict in the evidence.  Doc. 25 at 6.

Plaintiff's argument that there is not enough medical evidence in the record to make an RFC assessment without a consultative examination appears to be the same that state agency physician and psychologist opinions cannot be given substantial weight, as discussed above.  *See* Doc. 25 at 6.  She contends that nonexamining opinions are not substantial evidence, and without them there is no other opinion evidence in the record to support the ALJ's decision, so the ALJ had a duty to order a consultative exam.  *Id.*  The Court already has determined these opinions can be given substantial weight, so this argument for the necessity of a consultative exam fails.

Plaintiff also argues that the GAF scores of 50 or less conflict with the opinions of the state agency physicians, and thus a consultative exam must resolve the conflict.  *Id.*  As discussed above, the GAF scores in the record were not linked to plaintiff's inability to work, and thus are not inconsistent with the state consultant's RFCs.

20

Also, plaintiff never requested a consultative examination during proceedings before the ALJ. The Tenth Circuit has explained that, when a claimant is represented by counsel, the ALJ may rely on the claimant's counsel to structure the case and identify issues requiring further development. *Hawkins*, 113 F.3d at 1167. When such a claimant does not request a consultative examination, the ALJ does not have a duty to order one "unless the need for one is clearly established in the record." *Id.* at 1168. Here, the record before the ALJ did not clearly establish the need for a consultative examination. Plaintiff fails to establish a direct conflict in the medical opinion evidence and does not point to inconclusive evidence that requires a consultative exam. The state agency consultants' examinations may be given substantial weight here, therefore, there is conclusive medical opinion evidence supporting the ALJ's decision. Without record evidence establishing the need for a consultative examination before the ALJ could determine plaintiff's functional limitations, the ALJ had no duty to order one. The Court thus concludes that the ALJ committed no reversible error by failing to order a consultative examination.

**4. Did the ALJ err by not including limitations in the RFC related to plaintiff's moderate difficulties maintaining concentration, persistence, or pace?**

Plaintiff contends that the ALJ's RFC is unsupported by substantial evidence because the ALJ did not include limitations in the ALJ's finding that plaintiff has moderate difficulties maintaining concentration, persistence, or pace. Doc. 11 at 27–28. When determining the severity of plaintiff's mental impairments, the ALJ concluded that plaintiff has moderate difficulties with concentration, persistence, or pace. (R. 17) The ALJ noted that this determination was not part of the RFC assessment, which requires "a more detailed assessment," but the ALJ stated that her RFC assessment "reflects the degree of limitation [she] found in the 'paragraph B' mental function analysis." (*Id.* at 18)

Then, in her RFC assessment, the ALJ concluded that plaintiff "is capable of performing work that involves some skilled but not complex tasks." (*Id.*)  The ALJ supported her RFC determination with the opinion of the state agency psychologist consultant, Dr. Akeson. (*Id.* at 20)  The ALJ assigned substantial weight to Dr. Akeson's opinion because it was consistent with the record evidence as a whole including but not limited to her "essentially normal mental status examinations." (*Id.*)  Dr. Akeson concluded that plaintiff has moderate difficulties maintaining concentration, persistence, or pace. (*Id.* at 56, 69)  Dr. Akeson also found that while plaintiff has some difficulty with spoken instructions, she is capable of reading for long periods of time and following written instructions. (*Id.* at 61, 72)  Dr. Akeson also opined that plaintiff "retains the capacity to acquire and retain moderately-complex instructions, and to sustain concentration and persistence with moderately complex tasks." (*Id.* at 62, 74)

The Court finds no error in the ALJ's analysis.  First, the Court rejects plaintiff's argument that the ALJ erred by failing to include the moderate limitations on maintaining concentration, persistence, or pace in the RFC because, as the Tenth Circuit "has repeatedly held, albeit in unpublished decisions," the ALJ's determination of mental limitations at steps two and three do not apply at later steps in the RFC determination.  *Suttles v. Colvin*, 543 F. App'x 824, 826–27 (10th Cir. 2013) (citing *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013); *DeFalco–Miller v. Colvin*, 520 F. App'x 741, 747–48 (10th Cir. 2013)); *see also Beasley*, 520 F. App'x at 754 ("[An] ALJ's finding of 'moderate difficulties' in social functioning in the 'paragraph B' criteria does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."); *see also* SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996) (stating that "the [ALJ] must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s)

at steps 2 and 3 of the sequential evaluation process").  The ALJ therefore "was under no obligation to include limitations in [concentration, persistence, and pace] in [plaintiff's] RFC based solely on [her] finding that she had 'moderate difficulties' in [concentration, persistence, and pace] as part of the distinct step-three analysis."  *Beasley*, 520 F. App'x at 754.

Second, in formulating the RFC, the ALJ relied on Dr. Akeson's opinion that plaintiff "retains the capacity to acquire and retain moderately-complex instructions, and to sustain concentration and persistence with moderately complex tasks."  (R. 62, 74)  The ALJ explained that the evidence in the record supported Dr. Akeson's opinion, and thus she assigned it substantial weight.  The ALJ did not err when she made this determination.  *See Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (finding "no error in the ALJ not importing [plaintiff's] limitations identified generally [at step 3] into the more detailed RFC determination[,]" where the ALJ relied on "the consultant's mental RFC opinions" to determine the RFC, and a "finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment"); *see also DeFalco–Miller*, 520 F. App'x at 748 (noting that the ALJ's statement at step three that plaintiff had "no more than moderate difficulties maintaining social functioning" was neither a medical fact nor nonmedical evidence that the ALJ must include in the RFC).

Finally, the Court rejects plaintiff's argument that the ALJ's limitation of plaintiff to simple, routine, and unskilled work is insufficient to account for plaintiff's moderate difficulties in maintaining concentration, persistence, or pace.  Doc. 25 at 9 (citing *Bowers v. Astrue*, 271 F. App'x 731, 733–34 (10th Cir. 2008) (further citations omitted)).  Defendant responds that, here, the ALJ did more than limit plaintiff to simple or unskilled work.  Doc. 16 at 15.  The Court agrees.  As described above, the ALJ limited plaintiff to some skilled but not complex tasks that

do not require interaction with public and only occasional interaction with co-workers.  (R. 18)

The ALJ based that determination on the record evidence, and the Court finds no error.

**5.   Did the ALJ err by not including in the RFC a limitation on plaintiff's ability to interact appropriately with supervisors?**

Plaintiff contends that the ALJ erred by recognizing the need to preclude plaintiff from

contact with the general public and limit her contact with co-workers, but failing to address

plaintiff's ability to respond appropriately to supervisors.  Doc. 11 at 28–29; Doc. 25 at 10–11.

While plaintiff correctly points out that SSR 96-9p states that unskilled work generally requires

"responding appropriately to supervision," plaintiff points to no record evidence showing that

she would be unable to do so.  *See* SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996).  Instead,

in plaintiff's own function assessment, she says that she gets along "fine" with authority figures

such as bosses.  (R. 190)  The evidence supporting limitations on her interactions with the public

and co-workers does not establish the necessity of a limitation related to supervision.  Plaintiff

identifies no record evidence requiring the ALJ to assess a greater functional limitation.  The

Court thus concludes the ALJ did not err by failing to consider plaintiff's inability to interact

with supervisors.

**6.   Did the ALJ err by failing to link the RFC to specific evidence in the record?**

Plaintiff next argues that the ALJ erred by failing to link the RFC determination to

specific evidence in the record.  Doc. 11 at 29.  She claims that SSR 96-8p requires the RFC

assessment to include a narrative discussion describing how the evidence supports each of the

ALJ's conclusions, citing specific medical facts and nonmedical evidence.  Plaintiff also

contends that the ALJ did not identify which, if any, functional limitations are linked to

plaintiff's "severe" impairments of obesity and migraines.

24

The Social Security regulations do not require "a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  Instead, the narrative discussion required by SSR 96-8p must "describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." *Terry v. Colvin*, No. 14-2110-JWL, 2015 WL 400907, at *11 (D. Kan. Jan. 28, 2015) (citing *Castillo v. Astrue*, No. 10–1052-JWL, 2011 WL 13627, at *11 (D. Kan. Jan. 4, 2011); *Thongleuth v. Astrue*, No. 10–1101–JWL, 2011 WL 1303374, at *13 (D. Kan. Apr. 4, 2011)).  The Court has reviewed the ALJ's narrative discussion and concludes that it comports with this standard.

The ALJ's narrative discussion of the RFC assessment appears on pages 5 through 8 of her decision.  (R. 18–21)  In that analysis, the ALJ described how the evidence supports the RFC determination, and the ALJ cited specific medical facts and nonmedical evidence on which she relied when making that determination.  The ALJ cited various medical records that supported her determination, including those of Dr. Mauricio Garcia (R. 19, 519, 529, 541, 545, 547, 556), Dr. Michael W. Lowry (R. 18–19, 531, 533), Dr. Francisco Judilla (R. 19, 489–491, 638), Elaine Boyd, APN (R. 20, 311, 645–46, ), Amber Castro, BS, CSS (R. 20, 429, 643–711), and various imaging results (R. 19, 721, 723–24, 791).

The ALJ also discussed, specifically, plaintiff's migraines in her RFC assessment.  (R. 19)  The ALJ noted that the record did not establish that plaintiff had significant treatment for her migraine headaches.  (*Id.*)  The ALJ described treatment that plaintiff received for a migraine during an emergency room visit on January 19, 2012.  (*Id.*)  The ALJ also stated that plaintiff had an MRI scan of her brain on July 11, 2012, and the result was unremarkable.  (*Id.*)  The ALJ found plaintiff's migraines were a severe impairment, but based on the medical evidence cited,

the ALJ found that plaintiff could perform sedentary work that avoids exposure to extreme cold, excessive vibration and operational control of moving machinery, unprotected heights and hazardous machinery, and work that requires her to perform some skilled work, but not complex tasks, without public interaction and only occasional interaction with co-workers. (*Id.* at 16, 18–19)  Plaintiff cites no evidence showing that her migraines produce additional limitations that the ALJ failed to include in the RFC determination.  Without such evidence, the Court finds no error in the ALJ's determination of plaintiff's RFC.  *See Walden v. Astrue*, No. 11-4120-SAC, 2012 WL 3733305, at *8 (D. Kan. Aug. 28, 2012) (rejecting plaintiff's argument that the ALJ failed to account for the severity of plaintiff's depression in the RFC assessment because plaintiff cited no evidence that her depression caused limitations not included in the ALJ's RFC findings).

The ALJ also considered plaintiff's obesity.  An ALJ must "consider the effects of obesity when assessing RFC, including the fact that 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (quoting SSR 02–1p, 2000 WL 628049, at *1 (Sept. 12, 2002)).  An ALJ "may 'not make assumptions about the severity or functional effects of obesity combined with other impairments,' but rather, must 'evaluate each case based on the information in the case record.'" *Id.* (quoting SSR 02–1p, 2000 WL 628049, at *6).  Here, the ALJ found that plaintiff's obesity was a severe impairment.  (R. 16)  But the ALJ also found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404.  (*Id.* at 17–18)  This included her obesity.  (*Id.*)  The ALJ noted plaintiff's obesity in the RFC determination, listing her height and weight.  (*Id.* at 19)  And, when determining plaintiff's RFC, the ALJ gave significant weight to the opinions of Dr. Ceaser, who considered plaintiff's obesity in her medical opinion and

limited plaintiff to sedentary work involving moderately complex tasks.  (*Id.* at 21, 52–75)

Based on this evidence, the ALJ determined that plaintiff has the residual functional capacity to

perform sedentary work with the following additional limitations:  she must have the opportunity

to alternate between sitting and standing at least every 30 minutes; she occasionally can climb

ramps or stairs, but never climb ladders, ropes, or scaffolds or balance; she occasionally can

stoop, but never kneel, crouch, or crawl; and she must avoid exposure to extreme cold, excessive

vibration, operational control of moving machinery, unprotected heights, and hazardous

machinery.  (R. 18–21)  The RFC assessment adequately considered plaintiff's obesity.

Moreover, plaintiff points to no record evidence that the ALJ failed to consider.

In sum, the ALJ's narrative discussion provided sufficient reasons for her decision,

satisfying the requirements of SSR 96-8p.  The Court finds no error in this narrative discussion

or an inadequate link between the evidence and the RFC determination.

### 7.  Did the ALJ err in her evaluation of plaintiff's credibility?

Plaintiff argues that the ALJ erred when evaluating plaintiff's credibility and, as a result,

improperly disregarded plaintiff's statements about her limitations.  Doc. 11 at 31–34.  There are

three steps in analyzing a claimant's evidence of pain:  "(1) whether Claimant established a pain-

producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus"

between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so,

whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact

disabling."  *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).  Here, plaintiff

established the first two steps, but alleges the ALJ erred when evaluating the objective and

subjective evidence of pain under step three.

When determining the credibility of subjective pain evidence, an ALJ should consider factors such as:  the dosages of medication and their effectiveness; the extensiveness of claimant's attempts to obtain relief; the frequency of medical contacts; the nature of daily activities; subjective measures of credibility that are peculiarly within the judgment of the ALJ; the motivation of and relationship between the claimant and other witnesses; the claimant's willingness to try any treatment prescribed; and the consistency or compatibility of nonmedical testimony with objective medical evidence.  *Id.*  (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)); *Moses v. Barnhart*, 321 F. Supp. 2d 1224, 1230 (D. Kan. 2004) (citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987); *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).  If the ALJ rejects plaintiff's complaints, she must explain why.  *Moses*, 321 F. Supp. 2d at 1230.

"An ALJ's credibility determinations are generally treated as binding on review."  *Elliott v. Astrue*, 507 F. Supp. 2d 1188, 1195 (D. Kan. 2007) (citing *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990)).  The ALJ is in the best position to "'observe and assess witness credibility[,]'" and so the Court normally defers to the ALJ's credibility determination.  *Id.* (quoting *Casias*, 933 F .2d at 801).  The ALJ's findings about "'credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).  The Court will not upset credibility determinations that are supported by substantial evidence.  *See Carson v. Barnhart*, 140 F. App'x 29, 34 (10th Cir. 2005) (quotations and citations omitted).  The Court discusses plaintiff's various arguments about the ALJ's credibility assessment, below.

### a.  Did the ALJ err by focusing improperly on plaintiff's failure to quit smoking?

In her decision, the ALJ noted that plaintiff continues to smoke, which is known to exacerbate musculoskeletal impairments.  (R. 20)  The ALJ found that plaintiff's choice to continue smoking "suggests that she has no interest in reducing her alleged symptoms or the progression of her impairments."  (*Id.*)  Plaintiff argues that the ALJ erred by focusing on her decision to continue smoking as evidence that her impairments are not disabling.  Doc. 11 at 31. Plaintiff asserts that the ALJ also improperly found her to be less credible based on her smoking. *Id.*

Continuing a smoking habit does not necessarily show that a claimant's complaints are incredible where there is other evidence of attempts to alleviate pain.  *See O'Donnell v. Barnhart*, 318 F.3d 811, 819 (8th Cir. 2003).  But, a claimant's willingness to try any prescribed treatment is an appropriate factor to consider when assessing credibility.  *See Moses*, 321 F. Supp. 2d at 1230 (upholding ALJ's credibility decision where the ALJ's assessment was based on specific factors including "the fact that plaintiff continues to smoke").  Here, there is evidence that plaintiff was advised to quit smoking.  (*See, e.g.*, R. 367, 503, 549, 925)  The ALJ thus could consider plaintiff's failure to quit smoking when assessing her credibility and deciding whether her impairments are disabling.  But the ALJ needed to make additional findings before doing so.

The *Moses* court concluded that the ALJ's reliance on the claimant's inability to quit smoking in the ALJ's credibility analysis was improper, but not reversible error.  *See Moses*, 321 F. Supp. 2d at 1232.  The court found that

> it is improper for the ALJ to rely on the claimant's failure to follow a doctor's order to quit smoking, unless the ALJ follows the mandates of 20 C.F.R. § 404.1530.  This regulation requires an analysis much like the Tenth Circuit's *Frey* test, requiring the ALJ to make a finding that plaintiff could return to work if she followed the prescribed treatment of quitting smoking.

*Id.* (citations omitted).  If there is no evidence demonstrating that the claimant would be restored to a non-severe condition if she quit smoking, the court should not consider her failure to quit smoking when determining whether her impairments are disabling.  *See Banks v. Apfel*, No. 98-4214-SAC, 2000 WL 1863382, at *13 (D. Kan. Nov. 13, 2000) (quoting *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000)).  And, the claimant cannot be rendered incredible if no medical evidence directly links her smoking to her pain.  *Id.* (finding that "even if medical evidence had established a link between smoking and her symptoms, it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful") (quoting *Shramek*, 226 F.3d at 813).

As in *Moses,* the ALJ improperly relied on plaintiff's inability to quit smoking because the ALJ failed to identify any evidence that quitting would allow plaintiff to perform activities she could not do while continuing to smoke.  Also, the ALJ improperly relied on plaintiff's failure to quit smoking when determining her credibility because no evidence directly linked plaintiff's smoking to her pain.[5]  But because the ALJ also relied on other evidence that was more persuasive,[6] considered the entire record, set forth specific evidence she relied upon, and based her determination on substantial evidence in the record as required, the Court finds that the

---

[5] Defendant cites *Qualls v. Apfel* and argues that the ALJ's credibility analysis does not need to follow 20 C.F.R. § 404.1530 and thus need not determine whether plaintiff could return to work if she quits smoking.  Doc. 16 at 21.  The Tenth Circuit explained in *Qualls* that the ALJ had not denied plaintiff benefits because he failed to follow prescribed treatment that would have restored plaintiff's ability to work; "[r]ather, the ALJ properly considered what attempts plaintiff made to relieve his pain—including whether he took pain medication—in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling."  206 F.3d 1368, 1372–73 (10th Cir. 2000) (citations omitted).  The cases considering smoking, however, intertwine the credibility determination and §404.1530, and require medical evidence directly showing that quitting smoking would alleviate plaintiff's pain.  *See Moses*, 321 F. Supp. 2d at 1232; *Banks,* 2000 WL 1863382, at *13.  *See also Flannagan v. Colvin*, No. 12-4050-JWL, 2013 WL 5499807, at *8–9 (D. Kan. Oct. 3, 2013) (finding that *Qualls* does not apply where claimant failed to undertake treatment recommended by her physician, and holding that the ALJ must consider whether quitting smoking would restore claimant's ability to work "before the ALJ may use her failure to follow the recommended treatment to discount the credibility of Plaintiff's allegations of symptoms").

[6] The other factors relied on by the ALJ in assessing credibility and disability are discussed in Section III.A.7.b, below.

ALJ's decision about plaintiff's credibility and disability does not require reversal.  *See Moses*, 321 F. Supp. 2d at 1232; *see also Flannagan*, 2013 WL 5499807, at *10 (Despite the ALJ's error by relying on plaintiff's failure to quit smoking, "the ALJ based his credibility determination on other factors also," and "a credibility determination requires consideration of all of the relevant factors in combination. . . . [W]hen excluding [the smoking] factor from consideration, the court finds that substantial record evidence . . . supports the ALJ's determination that Plaintiff's allegations are not credible.")

Plaintiff contends that "when any of the factors relied on by the ALJ are found to be unsupported or contradicted by the record, the court is precluded from weighing the remaining factors to determine whether they, by themselves, are sufficient to support the ALJ's credibility determination."  Doc. 25 at 14.  This argument misapprehends the governing law.  Rather the governing standard holds:

> Because a credibility assessment requires consideration of all the [pertinent] factors in combination, . . .when *several* of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, [the] court is precluded from weighing the remaining factors to determine whether they, by themselves, are sufficient to support the ALJ's credibility determination.

*Romero v. Apfel*, No. 99-1241, 2000 WL 985853, at *4 (10th Cir. July 18, 2000) (citation and internal quotations omitted) (emphasis added).  Here, as discussed below, smoking is the only improper factor relied on by the ALJ.  The Court considers the remaining factors and determines, below,  that the ALJ's credibility determination is supported by substantial evidence.

> **b.  Did the ALJ err by overstating or mischaracterizing plaintiff's activities of daily living, mischaracterizing plaintiff's care as conservative, or finding that plaintiff overstated her pain symptoms?**

The Court next considers whether the other factors considered by the ALJ's credibility finding are "closely and affirmatively linked to substantial evidence and not just a conclusion in

the guise of findings.'"  *Elliott v. Astrue*, 507 F. Supp. 2d at 1195.  The Court concludes that they are linked to substantial evidence.

Plaintiff argues that the ALJ erred by finding that plaintiff's activities of daily living are inconsistent with her allegations of disability.  Doc. 25 at 13.  She asserts that the ALJ overstated her activities and that her activities are consistent with disability.  *Id.*  And, she argues that there is no evidence that she over reported her pain symptoms, so the ALJ's statement that "[i]t appears that the claimant may have over reported her pain symptoms in order to receive narcotic medication" is in error.  Doc. 25 at 14.  (R. 19)   Plaintiff also argues the ALJ erred by mischaracterizing her care as conservative.  Doc. 25 at 14.

As for plaintiff's daily living activities, plaintiff argues that the ALJ improperly focused on her ability to take a vacation.  Doc. 11 at 32.  She contends that this was not really a vacation, but just a couple of days with a friend to get away from her problems, and so the ALJ overstated or mischaracterized her activities of daily living.  *Id.*  She also argues that the ALJ improperly considered her activities of going out to eat.  Doc. 11 at 33.  The nature of the claimant's daily activities is one factor an ALJ should consider when determining credibility.  *See Moses*, 321 F. Supp. 2d at 1230.   But, plaintiff argues that "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain.  The sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity."  *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (internal citations and quotations omitted).  But, the ALJ's decision here does not indicate she relied only on "minimal daily activities" as substantial evidence that plaintiff was not in pain.  The ALJ referenced plaintiff's camping, going out on dates with her boyfriend, and her vacation, which are not the "sporadic performance of household tasks."  And, regardless, while such actions by

themselves do not establish that plaintiff can engage in substantial gainful activity, they may be considered along with other record evidence to determine whether a claimant is entitled to disability benefits.  *See Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (finding that claimant's ability to perform household tasks, work in his yard, work on cars, and "take an occasional trip with his brother" may be considered, along with the medical testimony, in determining whether a party is entitled to disability benefits).  In addition, the ALJ relied not only on this evidence—she also expressly referenced medical evidence to find plaintiff's allegations of pain only partially credible.  (R. 19–20)

As part of the credibility determination, the ALJ conducted a detailed review of the medical evidence.  She noted several inconsistencies between the objective medical evidence and plaintiff's statements about pain.  (R. 19–20)  Ultimately, after considering the objective evidence and the subjective statements from plaintiff, her mother, and her community support specialist, the ALJ found plaintiff's subjective allegations of pain were not as severe as she alleged.  (*Id.*)

Plaintiff argues that "there is not a shred of evidence [she] exaggerated her pain symptoms or was improperly seeking medication for relief of her pain," as the ALJ determined. Doc. 11 at 33–34 (R. 19 ("It appears the claimant may have over reported her pain symptoms in order to receive narcotic medication.")).  But the record includes a report in which plaintiff told her community support specialist that "the medications aren't working but that they are keeping her 'high' so that she doesn't care."  (R. 704)   And the ALJ pointed to objective evidence when, two weeks later, plaintiff reported a reduced pain level, indicating that the medication does in fact help.  (R. 19, 493, 489)  The ALJ is entitled to consider subjective measures of credibility

that are peculiarly within her judgment.  *See Moses*, 321 F. Supp. 2d at 1230.  Thus, plaintiff's argument is without merit.

Finally, the plaintiff argues that the ALJ improperly characterized her care as "conservative."  Doc. 25 at 14.  After plaintiff's back surgeries, the ALJ noted she has subsequently "been maintained on various narcotic pain medications and other conservative procedures such as epidurolysis and medical branch blocks."  (R. 18–19)  Plaintiff contends that her use of narcotic medications, occasional ER care for pain, multiple injections, radiofrequency ablation, and medial nerve blocks are not conservative procedures at all, and so the ALJ erred when formulating her RFC.  Doc. 25 at 14.  But, the objective medical record refers to oxycodone and local measures such as epidurals as "conservative."  (R. 542)  And the hearing testimony indicates plaintiff could get a spinal cord stimulator if she had gotten surgery to fix some screws and rods in her back.  (*Id.* at 39)  The Court thus finds plaintiff's argument is without merit.

The ALJ also found plaintiff's allegations of disabling pain only partially credible.  (R. 19–20)  But, she accepted plaintiff's statement that she can only sit and stand for short periods of time (*id.* at 38–39) and included a sit/stand option in the RFC.  The ALJ also accredited limitations that plaintiff can never kneel, crouch, or crawl.  These are more restrictive than the ones recognized by the state agency physician's RFC assessment.  This indicates that the ALJ relied on all the evidence in the record, and not just the medical opinion evidence.  Only after considering all of the evidence—subjective and objective—did the ALJ conclude that plaintiff's level of pain did not preclude a RFC for sedentary work subject to a number of limitations.  (*Id.* at 18–21)  Thus, the ALJ's credibility findings are closely and affirmatively linked to substantial record evidence and the Court finds no error.

In sum, the Court concludes that substantial record evidence supports the ALJ's RFC determination. The ALJ thoroughly examined the record and determined from the evidence as a whole that plaintiff has the ability "to perform sedentary work as defined in 20 CFR [§§] 404.1567(a) and 416.967(a)." (R. 18) The Court, therefore, affirms the ALJ's RFC finding.

**B. The ALJ's Application of the Commissioner's Burden at Step Five**

Plaintiff asserts that the ALJ erred at step five in the analysis by determining that the Commissioner had met her burden to prove that plaintiff could perform work that exists in the national economy. Doc. 11 at 22–24. At step five, the Commissioner bears the burden to show that a claimant is able to perform work in the national economy, other than claimant's past relevant work. *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). The burden imposed at this step requires the ALJ to consider whether, given a claimant's background and RFC, the claimant can perform work that exists in significant numbers in the national economy. *See id.*; 20 C.F.R. § 404.1520(g).

The Commissioner may satisfy this burden with a vocational expert's testimony. 20 C.F.R. §§ 404.1566(e), 416.966(e). The ALJ must present the vocational expert with a claimant's physical and mental impairments before the vocational expert determines whether sufficient jobs exist in the national economy. *Hargis v. Sullivan*, 945 F.2d 1482, 1491–92 (10th Cir. 1991). The ALJ may elicit testimony by hypothetical questions, but those questions must "'relate with precision [to] all of a claimant's impairments . . . .'" *Id.* at 1492 (quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990)). When the ALJ's RFC findings are "adequately reflected in the ALJ's hypothetical inquiries to the vocational expert, the expert's testimony provide[s] a proper basis for adverse determination of [the] case." *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (citation omitted).

Here, as discussed above, the ALJ properly determined plaintiff's RFC and concluded, based on that RFC and plaintiff's background, that plaintiff could not perform her past relevant work. (R. 21)  The ALJ recognized that the burden shifted to the Commissioner at step five to show that plaintiff could perform "other work" that exists in significant numbers in the national economy. (*Id.* at 16)  The ALJ asked the vocational expert if an individual with plaintiff's RFC limitations could perform work that exists in significant numbers in the national economy. (*Id.* at 22, 48–49)  And the vocational expert responded that such an individual could perform the requirements of other work. (*Id.* at 49)  For example, she testified that plaintiff could work as a document preparer, a laminator, or an administrative support worker. (*Id.*)

Plaintiff argues that the ALJ wrongfully relied on the vocational expert's testimony that she could perform these three jobs.  Plaintiff asserts that, while the RFC prohibits operational control of moving machinery, the jobs of document preparer and laminator require the operation of moving machinery. Doc. 11 at 22.  In particular, she asserts that the vocational expert's testimony regarding these two jobs was inconsistent with the Dictionary of Occupational Titles ("DOT").  She also claims that the job of administrative support worker, or "addresser," conflicts with the RFC limitations because she would not be able to sit for six hours a day. *Id.* at 24.

### 1. Does document preparer or laminator work involve the "operational control of moving machinery"?

In asking the hypothetical question of the vocational expert, the ALJ described an individual who would need to avoid operational control of moving machinery, among other things. (R. 48)  The vocational expert listed document preparer and laminator as jobs an individual with the listed limitations could perform. (R. 49)  Plaintiff argues that document preparation work involves using a photocopying machine, a microfilming machine, and other work devices, which, she contends, is operating moving machinery.  Doc. 11 at 22–23 (citing

DOT 249.587-018, 1991 WL 672349).  Plaintiff also argues laminator work involves operational control of moving machinery—a machine that laminates. Doc. 11 at 22–23 (citing DOT 690.685-258, 1991 WL 678561).

The ALJ must inquire about any possible conflict between the vocational expert's testimony and the information provided by the DOT.  *Gibbons v. Barnhart*, 85 F. App'x 88, 93 (10th Cir. 2003) (quoting SSR 00–4p, 2000 WL 1898704, at *4 (Dec. 4, 2000)).  Here, the ALJ asked if the vocational expert's testimony was consistent with the DOT, and the expert stated that it was.  (R. 50)  And as the ALJ's decision confirms:  "Pursuant to SSR 00–4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."  (R. 22)  No evidence shows that the vocational expert failed to consider the limitation against operational control of moving machinery when responding to the ALJ's question.  The ALJ thus fulfilled her obligations by determining that no conflict exists between the vocational expert's testimony and the DOT job descriptions.

Also, nothing supports plaintiff's arguments that the DOT job descriptions conflict with the vocational expert's testimony.  Plaintiff's allegations that the jobs of document preparer and laminator involve operational control of moving machinery are based on plaintiff's own interpretation of the job descriptions.  This provides no basis for reversal.  *See Beier v. Colvin*, No. 12–1300–CM, 2013 WL 4059180, at *4 (D. Kan. Aug. 12, 2013) (plaintiff's own interpretation of the DOT is a lay interpretation and insufficient to contradict the vocational expert's testimony); *see also Thongleuth v. Astrue*, No. 10–1101–JWL, 2011 WL 1303374, at *18 (D. Kan. Apr. 4, 2011).

Neither this Court, the ALJ, nor plaintiff has the expertise to interpret "operational control of moving machinery" to conflict with the vocational expert's testimony.  *See*

*Thongleuth*, 2011 WL 1303374, at *18. The job descriptions for document preparer and laminator do not clearly conflict with the vocational expert's testimony. *See* DOT 249.587-018, 1991 WL 672349 (The job of document preparer involves use of a photocopying machine and other work devices); DOT 690.685-258, 1991 WL 678561 (A laminator "Presses button to start conveyor and heating elements. Turns knob to adjust distance between presser rollers. Places aligned parts on conveyor leading to machine that laminates parts. Removes parts from machine and ties parts into bundles . . . ."). The Court thus finds the ALJ properly relied on the vocational expert's testimony that no conflict exists and there is no error.

### 2. Do the RFC limitations bar plaintiff from performing the job of administrative support worker or addresser?

Finally, plaintiff asserts that she cannot perform the job of administrative support worker because it would not allow her to alternate between sitting and standing every thirty minutes. Doc. 11 at 24. Plaintiff argues that the requirement in the RFC that she "needs to alternate sitting/standing every 30 minutes" precludes her from performing *all* sedentary jobs. She contends that the RFC's sit/stand mandate requires her to sit 3.5 hours a day, and stand 3.5 hours a day. Sedentary work generally requires the ability to sit for six hours, which she maintains prevents her from all sedentary work. *See* SSR 96-9p, 1996 WL 374185, at *3 (noting that for sedentary work "sitting would generally total about 6 hours of an 8-hour workday"). The Court disagrees.

The ALJ established an RFC that provided plaintiff could perform sedentary work requiring standing two hours and sitting six hours of the day. (R. 18) She qualified this by adding that plaintiff would need to alternate between sitting and standing every thirty minutes. (*Id.*) SSR 83-12 addresses special situations where a claimant needs to alternate between sitting and standing:

38

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing.  The individual may be able to sit for time, but must then get up and stand or walk for awhile before returning to sitting.  Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work. . . . There are some jobs in the national economy—typically professional and managerial ones—in which a person can sit or stand with a degree of choice. . . .  However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task.  Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253, at *4  (Jan. 1, 1983).  SSR 96-9p elaborates on RFC assessments where an individual needs to "alternate the required sitting of sedentary work by standing (and possibly, walking) periodically," noting "[i]t may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work."  SSR 96-9p, 1996 WL 374185, at *7.  Here, the ALJ did just that—she consulted a vocational expert.

The vocational expert considered the RFC with the sit/stand option and testified that plaintiff could work as a document preparer, a laminator, or an administrative support worker. (R. 48–49)  She then provided the number of jobs available in the United States and in Missouri for each job.  (*Id.* at 49)  The ALJ considered this testimony and concluded that plaintiff is capable of performing other work that exists in significant numbers in the economy.  (*Id.* at 22)

When given claimant's RFC and asked about jobs claimant could perform, the ALJ properly can rely on the vocational expert's testimony as substantial evidence supporting the ALJ's conclusion that claimant is not disabled.  *See Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990).  The ALJ here properly relied on the vocational expert's testimony that, given plaintiff's RFC, sufficient jobs existed in the national economy that plaintiff could perform.  As a

result, the Court rejects plaintiff's argument that the ALJ did not meet her burden to show that plaintiff could perform "other work." The Court finds no reversible error at step five.

**IV.    Plaintiff's request for litigation costs is denied.**

Plaintiff asks the Court to assess her litigation costs against the Commissioner. *See* Doc. 1 at 2. A Social Security plaintiff may seek to recover her attorney's fees and costs under both the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), and § 406(b)(1) of the SSA. *See McGraw v. Barnhart*, 450 F.3d 493, 497 (10th Cir. 2006) ("'EAJA fees and fees available under § 406 are two different kinds of fees that must be separately awarded.'") (quoting *Frazier v. Apfel*, 240 F.3d 1284, 1286 (10th Cir. 2001)).

"The EAJA allows a *prevailing party* to recover litigation costs against the United States government 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'"[7] *Gatson v. Bowen*, 854 F.2d 379, 380 (10th Cir. 1988) (quoting 28 U.S.C. § 2412(d)(1)(A)) (emphasis added). Fees under the EAJA penalize the SSA for advancing an unjustified legal position and are paid to the plaintiff out of agency funds. *Orner v. Shalala*, 30 F.3d 1307, 1309 (10th Cir. 1994). Here, the Court finds that the government's position on appeal was substantially justified. Both parties cited relevant legal authority and advanced rational arguments on the question of whether this Court should reverse or uphold the ALJ's decision. Therefore, an award of litigation costs under the EAJA is not appropriate.

"[A] district court may award attorney fees under § 406(b)(1), when . . . it [renders] a judgment remanding a social security case to the agency, and the agency subsequently [awards] benefits." *Early v. Astrue*, 295 F. App'x 916, 917 (10th Cir. 2008) (citing *McGraw*, 450 F.3d at

---

[7]    A party seeking an award of fees and costs under the EAJA must submit a request to the Court under 28 U.S.C. § 2412(d)(1)(B) within 30 days of the entry of a final judgment.

504-05).  Fees awarded under § 406(b) are paid to the plaintiff's counsel out of plaintiff's past-due benefits.  *Orner*, 30 F.3d at 1309.  If a district court remands a case for further proceedings before the SSA, a plaintiff may file a motion seeking fees under § 406(b)(1) "within a reasonable time of the Commissioner's decision awarding benefits" under Fed. R. Civ. P. 60(b)(6).  *McGraw*, 450 F.3d at 504;  *see also Early*, 295 F. App'x at 919 ("In *McGraw*, we noted that district courts do not have the power to issue decisions relying on hypothetical future occurrences. . . . We found 'flawed' a decision by a district court in another circuit awarding attorney fees that were to be paid only 'in the event' that the agency awarded past-due social security benefits on remand.").

Here, the request for attorney fees was, initially, premature.  Now, it is moot as the Court affirms the Commissioner's decision.

## V.  Conclusion

After considering the briefs submitted and closely reviewing the administrative record, the Court rejects plaintiff's arguments.  For the reasons set forth above, the Court affirms the ALJ's decision denying plaintiff SSD and SSI benefits.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff Social Security Disability and Supplemental Security Income benefits is affirmed.

**IT IS SO ORDERED.**

**Dated this 30th day of September, 2015, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
